## In re ALABAMA BRAID CORPORATION.

### No. 2826.

District Court, N. D. Alabama, Middle Division.

Feb. 25, 1935.

William Alfred Rose and J. Edward Thornton, both of Birmingham, Ala. (Bradley, Baldwin, All & White, of Birmingham, Ala., of counsel), for petitioner First Nat. Bank.

C. W. Taylor and Randolph Hobbs, both of Birmingham, Ala. (Monette & Taylor, of Birmingham Ala., of counsel), for contestant Latady.

GRUBB, District Judge.

This cause coming on to be heard on this date on the petition for review of the First National Bank in Gadsden, as successor trustee under the first mortgage and deed of trust of Alabama Braid Corporation, dated October 1, 1928, and mortgage supplemental thereto dated October 14, 1931, and on the motion of Francis B. Latady, as trustee in bankruptcy in this cause, made in open court to dismiss the said petition for review, and, after hearing the arguments of counsel and the court being of the opinion that the said motion to dismiss should be overruled, the court thereupon proceeded to consider the pleadings and the evidence.

### Findings of Fact.

The court makes the following findings of fact with respect to the matter under consideration:

Under date of August 15, 1928, an underwriting agreement was entered into between Benjamin Kahn, the First National Bank of Gadsden, Gadsden National Bank, and Marx & Company, whereunder Kahn agreed to cause a corporation to be organized and to transfer to that corporation, in consideration for its common stock, the assets and business of Tex-O-Ray Braid Corporation, and the machinery and equipment of Sutro Brothers Manufacturing Company, and further to cause such corporation to issue its preferred stock and its First Mortgage Bonds, which bonds would be secured by a first mortgage upon all of its property owned at the time of its execution and all of its property thereafter acquired. The two banks, parties to the said agreement, agreed to purchase a portion of such preferred stock, and Marx & Co. agreed to purchase all of the bonds. The agreements on the part of each party to the underwriting agreement were in consideration of the agreements of the other parties thereto and were conditioned upon the performance by the other parties of their respective agreements.

Pursuant to such underwriting agreement, the bankrupt was subsequently incorporated under the laws of Alabama on November 9, 1928. Thereafter the bankrupt executed its first mortgage and deed of trust dated October 1, 1928, which is hereinafter referred to as the "original mortgage," as contemplated in the underwriting agreement, wherein the First Na-

tional Bank of Gadsden was named as trustee. The original mortgage was filed for record in the office of the judge of probate of Etowah county, Ala., on December 10, 1928, and is duly recorded in the records of that office. It conveyed certain real estate particularly described located in Etowah county, Ala., on which is constructed the plant of the bankrupt, and also conveyed all buildings, structures, fixtures, improvements, and additions then owned or thereafter acquired or constructed upon such lands, also all machinery, tools, equipment, and personal property of the bankrupt, except stocks of merchandise and other personal property of the bankrupt subject to sale in the ordinary course of business. The original mortgage also contained an after-acquired property clause, whereby it conveyed all property of whatever kind or character, whether real or personal, thereafter acquired by the bankrupt, except such as might be acquired or held for sale in the ordinary course of business. The property involved in this contest is not property which was acquired or held by the bankrupt for sale in the ordinary course of its business, and no part thereof falls within the exceptions referred to.

At the time of the filing for record of the original mortgage, the bankrupt did not hold the legal title to the property involved in this contest, but the properties of the said Tex-O-Ray Braid Corporation and Sutro Bros. Manufacturing Company, agreed to be conveyed under the provisions of the said underwriting agreement, were, pursuant to such agreement, conveyed to the bankrupt on December 20, 1928. Such properties comprised substantially all of the property comprised in this contest, the balance thereof being thereafter acquired by the bankrupt on various later dates.

The first mortgage bonds secured by the original mortgage were duly executed and issued by the bankrupt and delivered to Marx & Co. on December 24, 1928, who paid therefor in accordance with the terms of the underwriting agreement. Such bonds were negotiable instruments and stated on their face that they were secured by the mortgage in question. They were thereafter sold by Marx & Co. on the open market in the course of its business, and all of them were outstanding at the date of bankruptcy hereinafter referred to, and are now outstanding and unpaid, together with interest thereon from October 1, 1931.

At the time of the organization of the bankrupt, its plant had not been constructed, and it was constructed during the early part of the year 1929. The Sutro Bros. machinery and properties were situated in Gadsden, Ala., at the time of the organization of the bankrupt, and the same were installed in the plant of the bankrupt during the early part of the year 1929. The Tex-O-Ray machinery and properties were situated at Whitestone, Long Island, at the time of the organization of the bankrupt, and the business of Tex-O-Ray Braid Corporation at Whitestone, Long Island, was operated for the account of the bankrupt following the organization of the latter until the month of April, 1929, when its machinery and properties were dismantled and shipped to Gadsden, Ala., where the same were thereafter installed in the plant of the bankrupt. During the year 1930 some additional machinery was purchased by the bankrupt and installed in its said plant. All of the property here in controversy was installed in the said plant prior to June 1, 1931, more than four months prior to the date of bankruptcy hereinafter referred to.

By supplemental mortgage dated October 14, 1931, the bankrupt conveyed to the First National Bank of Gadsden, as trustee under the original mortgage, and on the uses and trusts therein contained, certain machinery, equipment, and other properties, particularly described in the Exhibit A attached to such supplemental mortgage, which are the properties involved in this controversy. This supplemental mortgage was filed for record in the office of the judge of probate of Etowah county, Ala., on October 15, 1931, and is duly recorded in that office. No present consideration was given therefor, but it recites that it was executed in further assurance of the original mortgage. At the time of the execution of the supplemental mortgage, the trustee under the original mortgage knew that the bankrupt was insolvent, was going into bankruptcy, and caused the filing of the petition in bankruptcy to be delayed until after the supplemental mortgage had been executed, delivered, and recorded. The petition in bankruptcy was filed on October 20, 1931, and the bankrupt was thereafter adjudicated bankrupt on November 7, 1931.

By decree of the circuit court of Etowah county, Ala., which court had appropriate jurisdiction, entered on January 4, 1935, the First National Bank in Gads-

den was appointed successor trustee under the said original mortgage and supplemental mortgage, with all of the powers and subject to all of the restrictions respecting the trustee therein set out, and as such successor trustee it was authorized, empowered, and directed to execute the trusts therein created in accordance with the terms and conditions therein contained. By instrument filed for record in the office of the judge of probate of Etowah county, Ala., on January 5, 1935, the said First National Bank in Gadsden duly accepted its appointment as such successor trustee.

All of the properties in controversy were at the date of bankruptcy herein and are now located in Etowah county, Ala. Under the law of the state of Alabama, the filing for record of a chattel mortgage in the office of the judge of probate of the county in which is or will be located the property covered by such chattel mortgage constitutes notice of such mortgage from the date of the filing thereof.

From the foregoing, the court finds as a fact that the original mortgage was executed by the bankrupt in good faith and for a valid present consideration, with the intention on the part of the parties thereto that it would cover the after-acquired property of the bankrupt here involved, and such original mortgage was filed for record more than four months prior to bankruptcy in the proper recording office so as to constitute notice thereof.

### Conclusions of Law.

The court states the following conclusions of law with respect to the matter under consideration:

[redacted] (1) The validity of a chattel mortgage covering after-acquired property is a local question determinable by the law of the state where the property is located, and the law of such state will be followed by the federal courts.

[redacted] (2) A court of bankruptcy is a court of equity, and is guided and controlled by equitable doctrines and principles.

[redacted] (3) Under the law of Alabama, the filing for record in that county in which the property is to be acquired of a chattel mortgage covering after-acquired property constitutes notice of such mortgage from the date the same is filed for record.

[redacted] (4) Under the law of Alabama, a chattel mortgage covering after-acquired property operates as a present contract which attaches when the property is acquired or comes into existence, and makes it in equity an effective security for the debt provided for in the mortgage. Courts of equity will protect and enforce such equitable title against all but bona fide purchasers thereof for value without notice. It is not necessary, in order to perfect such equitable title, that any additional mortgage be executed or that the mortgagee take possession of such property after the same is acquired by the mortgagor. Any holder of the legal title to such property, with notice of such equitable title, holds such legal title as trustee for the holder of such equitable title.

[redacted] (5) The said supplemental mortgage is void as to the trustee in bankruptcy, but nevertheless and without reference to such supplemental mortgage the said original mortgage created and vested in the trustee thereunder a valid equitable title to all of the property here involved, which attached and became vested when such property was acquired by the bankrupt, and this court recognizes and will protect such equitable title against the trustee in bankruptcy. Such equitable title is now vested in the First National Bank in Gadsden, as successor trustee under the original mortgage.

### Decree.

Upon consideration by the court, it is ordered, adjudged, and decreed by the court as follows:

1. The motion of the trustee in bankruptcy to dismiss the said petition for review is hereby overruled, and the said petition for review is hereby granted.

2. The petitioner, the First National Bank in Gadsden, as successor trustee under the first mortgage and deed of trust of the bankrupt, dated October 1, 1928, owns and holds the equitable title to all of the property described in Exhibit A to the answer of the said successor trustee filed in this cause, in trust and on the uses and trusts set out in the said first mortgage and deed of trust, and as security for the payment of the first mortgage bonds of the bankrupt dated October 1, 1928, and the performance of the covenants on the part of the bankrupt contained in the said first mortgage and deed of trust. At the time the petition in bankruptcy was filed herein, the said property described in said Exhibit A was subject to the said first mortgage and deed of trust and to the rights and equities of the petitioner in and to the

said property under the said first mortgage and deed of trust. The title of the trustee in bankruptcy in and to the said property is subject to the said first mortgage and deed of trust and to the said rights and equities of the petitioner.

3. The costs in the hearing before the referee in bankruptcy and on the petition for review are taxed against the trustee in bankruptcy.